UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MOHAMMED BHUIYAN,

                             Plaintiff,

        vs.                                          9:06-CV-409
                                               (FJS/GJD)

S. WRIGHT, Correctional Officer, *et al.*,

                             Defendants.

_____

MOHAMMED BHUIYAN
Plaintiff pro se

TIMOTHY P. MULVEY, Asst. Attorney General
Attorney for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

     In this amended civil rights complaint, plaintiff alleges that he was subjected to excessive force by the defendants. (Dkt. No. 48).  Plaintiff seeks substantial monetary relief.  Presently before the court is defendants' motion for partial summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 72).  Plaintiff has responded in opposition to defendants' motion. (Dkt. No. 74).

## DISCUSSION

1. **<u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of

showing the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

## 2.   Facts

In his amended complaint, plaintiff alleges that on April 20, 2003, at approximately 8:45 p.m., while he was incarcerated at Auburn Correctional Facility, plaintiff and several other inmates were crossing from the North Recreation Yard to the South Recreation Yard. Amended Complaint (AC) at p.4, ¶ 6. (Dkt. No. 48). Plaintiff claims that defendant Wright and ten other officers stopped plaintiff and "placed him on the wall" for a pat-frisk. AC at pp.4-4-1.  Plaintiff claims that during the pat-frisk, defendant Wright took various items of personal property from plaintiff.

*Id.*

Plaintiff states that defendants Koziol and Withers were among the officers present at the time of the pat-frisk, and defendant Koziol put handcuffs on plaintiff for no reason.  Plaintiff states that he asked defendant Withers for help, but that Withers did not respond.  Instead, defendant Withers allegedly told defendant Koziol not to "do anything in the yard," but to "wait until you take him back to his block." *Id.* Plaintiff states that defendants Koziol and Wright then escorted plaintiff back to his assigned block, but instead of taking plaintiff back to his cell, the defendants took plaintiff to a "feed-up" room located between 5 and 6 Companies. *Id.*

Plaintiff claims that once inside this "feed-up" room, defendant Koziol punched plaintiff several times in the chest.  Plaintiff states that he started to scream, but that defendant Koziol told plaintiff to be quiet.  Plaintiff claims that defendant Koziol ordered defendant Wright to "beat [plaintiff] down."  Plaintiff states that defendant Wright punched plaintiff in the face until defendant Koziol saw plaintiff's eyes begin to bleed.  Defendant Koziol allegedly told defendant Wright not to hit plaintiff in the face anymore, but to hit him in the body, where the blows would leave fewer "marks." *Id.*  Plaintiff states that defendant Wright hit and kicked plaintiff many times all over his body.  Plaintiff states that when he again attempted to scream, defendant Wright grabbed plaintiff by his sweatshirt hood, and tied the drawstrings around plaintiff's neck to keep him from screaming.

Plaintiff claims that after the "unwarranted" beating, defendant Koziol told plaintiff not to tell anyone or Koziol would bury plaintiff under the jail and give

3

plaintiff a Tier III disciplinary ticket for assaulting an officer.  Defendant Koziol then asked if plaintiff "understood," and when plaintiff did not answer, defendant P. Kuc pulled plaintiff's beard and ordered him to respond to defendant Koziol.  Plaintiff claims that defendant Kuc had been there throughout the plaintiff's beating.  Plaintiff claims that he was accompanied back to his cell by defendants Koziol, Kuc, Wright, and defendant Davis, who plaintiff claims had been "watching" the door during the incident.

Plaintiff alleges that as they were walking back to plaintiff's cell, defendant Davis told the others that they had not "killed" the "terrorist" yet, asked why plaintiff was still able to walk, and told the other defendants that they should break plaintiff's legs and arms.  Plaintiff claims that defendant Davis had been harassing plaintiff in this manner since December 20, 2002, in relation to another incident involving plaintiff.

Plaintiff was deposed on February 13, 2008.  Defendants have submitted a transcript of the deposition in support of their motion.  Plaintiff was asked whether he had any prior dealings with any of the defendants. Deposition Transcript (DT) at 20. Siuda Aff. Ex. 2.  Plaintiff testified that he had problems with both defendants Wright and Davis prior to the April 20, 2003 incident. (DT at 21)  Plaintiff stated that some of the guards believe that he is a terrorist,[1] and defendant Davis burned plaintiff's

---

[1] Plaintiff claims that defendant Davis arrived to search plaintiff's cell on December 20, 2002. (DT at 23).  Plaintiff claims that the officer came to search plaintiff's cell because he had testified for another inmate against a corrections officer, and the guards wanted to harass him for testifying. (DT at 24).  During the search, Davis found a letter from plaintiff's mother, who does not speak or write in English. (DT at 23).  Because the guards could not understand what was

beard with a lighter on one occasion. *Id.*  This incident happened on December 20, 2002, and plaintiff filed a grievance against Davis and another individual in connection with the beard-burning incident. (DT at 21-22).  Plaintiff testified that he had been punched and beaten many times prior to the April 20, 2003 incident, and that defendant Wright would come to harass plaintiff in his cell. (DT at 21).

Plaintiff also testified that he had some dealings with defendant Withers prior to the April 20, 2003 incident. (DT at 26).  Plaintiff stated that defendant Withers "used to threaten [plaintiff] any time he [saw plaintiff]" because plaintiff filed grievances against corrections officers. *Id.*  Plaintiff claimed that defendant Withers would put plaintiff's life in jeopardy by calling plaintiff a "rat" or a "snitch" when defendant Withers saw plaintiff in the yard. (DT at 27).

During plaintiff's deposition, he was asked to describe the April 20, 2003 incident. (DT at 28).  In response, plaintiff related some background facts regarding the incident that he had not included in the amended complaint. (DT at 28-29). Plaintiff stated that on April 20, 2003, defendant Wright stopped at plaintiff's cell at approximately five-thirty in the morning, to threaten him because he filed grievances and was a "terrorist." (DT at 28).  Defendant Wright stated that "we're going to do something to you." *Id.*  Later, plaintiff was crossing from the North Yard to the South Yard, when defendant Wright stopped him for the pat-frisk that plaintiff mentioned in

---

written in the letter, they assumed that it was "terrorist material," so they "beat" plaintiff, took the letter, and filed a misbehavior report against him that plaintiff states was ultimately dismissed. (DT at 23-25).  Plaintiff seems to be alleging that the December 20, 2002 incident started this campaign of harassment by the officers, ending in the April 20, 2003 incident that is the subject of this case.

his amended complaint. (DT at 29).

Plaintiff testified that although there were other inmates crossing from one yard to another, plaintiff was the only one stopped for a pat-frisk, and when plaintiff asked why he was being stopped, defendant Wright told plaintiff to "shut up." (DT at 31). Plaintiff stated that defendant Koziol put the handcuffs on plaintiff, and defendants Koziol, Wright, Davis, and Kuc[2] escorted plaintiff back to his housing unit. (DT at 34-35). Plaintiff then described the alleged assault and stated that Wright and Koziol were in the "little room" with plaintiff. (DT at 34). Plaintiff stated that defendant Koziol started punching plaintiff and then ordered defendant Wright to beat plaintiff. (DT at 34).

Plaintiff states that defendant Wright was hitting plaintiff in the face, and when plaintiff started to bleed, defendant Koziol wiped the blood from plaintiff's eyes with plaintiff's kufi.[3]  Defendant Koziol then allegedly told defendant Wright to stop hitting plaintiff in the face. (DT at 34-35). Plaintiff testified that defendant Wright kicked and punched plaintiff "all about [his] body." (DT at 35). Plaintiff claims that he fell and hit his tooth on the floor.[4] *Id.*  Plaintiff stated that when he began to scream, defendant Wright took plaintiff's sweatshirt hood and tied it so that plaintiff's

---

[2] In the deposition transcript, this defendant's name is spelled "Kucz," however from the Acknowledgment of Service, signed by the defendant, it is clear that he spells his name "Kuc," and this court will refer to him by the proper spelling of his name. *See* Dkt. No. 8 at p.2.

[3] A kufi is a religious head covering.  Plaintiff testified that Muslims wear kufis. (DT at 34).

[4] This was another detail that was not included in the amended complaint.

voice was muffled and his screaming could not be heard outside of the room. (DT at 35).

When the alleged beating was over, plaintiff claims that defendant Koziol picked plaintiff up and threatened him not to tell anyone. (DT at 35).  Plaintiff stated that defendant Koziol brought plaintiff "to a little corner outside" and that "every officer was there." *Id.*  Plaintiff stated that defendants Wright, Koziol, Kuc, and "other officer" were there. *Id.*  Later plaintiff stated that only defendants Koziol and Wright were actually in the room during the beating. (DT at 36-37).  Defense counsel specifically asked plaintiff who was in the room with him, and plaintiff responded "[w]hen they were beating, Sergeant Koziol and Officer Wright, two people." (DT at 36).  Counsel then asked whether it was "[j]ust those two," and plaintiff responded by saying "[t]hose two." (DT at 36-37).

Plaintiff continued to describe the incident which lasted approximately three to four minutes. (DT at 37-41).  Defense counsel then questioned plaintiff about defendant Koziol's alleged admonition to plaintiff not to tell anyone about the incident and his alleged threat to "bury" plaintiff. (DT at 42).  Plaintiff testified that he did not answer, and that defendant Kuc pulled plaintiff's beard. (DT at 43).

Plaintiff stated that he went to the hospital the next day and told the nurse that the guards "jumped" him. (DT at 47-48).  Plaintiff stated that they did not give him strong medication because he was taking ulcer medication. (DT at 49).  Plaintiff testified that he has no scar as a result of the cut on his eye. (DT at 53-54).  Plaintiff was also asked at the deposition to specify what his claims were against defendants

Kuc and Davis. (DT at 56).  Although it is not clear because plaintiff's English is not precise, plaintiff appears to have stated that defendants Kuc and Davis were there to make sure that no one came in the room while defendants Wright and Koziol were beating plaintiff, and defendant Kuc later pulled plaintiff's beard. (DT at 56).  Plaintiff also stated that defendant Withers's involvement was to tell the defendants not to "do anything" to plaintiff until they got him back to his block. (DT at 57).

Plaintiff filed a grievance, complaining about the April 20, 2003 incident.  It was investigated and denied at all administrative levels.  Defendants have included copies of plaintiff's grievance, together with the investigative memoranda and the decisions denying the complaint. Siuda Aff. Ex. 1.  Each defendant wrote a memorandum denying plaintiff's allegations. Ex. 1 at pp.4-8.  Nurse K. Quinn examined plaintiff on April 21, 2003 and submitted a memorandum, stating that plaintiff had a small abrasion to his right eyelid and slight swelling in the right eye. Ex. 1 at p.9.  Nurse Quinn stated that the plaintiff denied any other injuries. *Id.*  A series of photographs were taken of plaintiff on April 21, 2003. Ex. 1 at pp.10-16.

The amended complaint contains three "Causes of Action." AC at p.5. Although all the claims seem to relate to the use of excessive force, plaintiff also seems to allege that the defendants were discriminating against plaintiff because of his religion, nationality, and race.  However, the "discrimination" resulted in the excessive force, thus, the court has interpreted plaintiff's claim as one for excessive force.  The motion for partial summary judgment has been made ***only*** on behalf of defendants Withers, Davis, and Kuc. (Dkt. No. 72).

**3.    Eleventh Amendment**

It is now well-settled that the state itself cannot be sued under section 1983.

*Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v.*

*Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  This is true whether the

court is considering Eleventh Amendment immunity or a statutory interpretation of

section 1983. *Id.* at 815 n.3.  An action against state officers in their official capacities

is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v.*

*Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991)(citations omitted).

Although it is unclear from the amended complaint that plaintiff is attempting to

sue defendants in their "official capacities," to the extent that the complaint may be

read to do so, it should be dismissed.  Thus, this court will recommend dismissal of

any claims as against defendants in their "official capacities."

**4.    Eighth Amendment**

Defendants Davis, Withers, and Kuc argue that plaintiff has not stated an Eighth

Amendment claim against any of them.  Defendants argue that the only[5] claim against

defendant Davis is that he verbally abused plaintiff on the way back to his cell after

the alleged beating and questioned the other defendants as to why plaintiff was "still

walking." Def. Mem. of Law at 3.  It is true that inmates have no constitutional right

---

[5] Defendants include an argument that any claims based upon the December 20, 2002
incident would be barred by the three year statute of limitations. Def. Mem. of Law at p.4 (citing
*inter alia Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  While this statement is true since
plaintiff filed his original complaint on March 30, 2006, it does not appear, nor does this court
interpret plaintiff's complaint as raising a claim against defendant Davis based upon the
December 20, 2002 incident.  Plaintiff was simply attempting to set the background for his prior
problems with defendant Davis, leading to the April 30, 2003 incident.

to be free from harassment. *Greene v. Mazzuca*, 485 F. Supp. 2d 447, 451 (S.D.N.Y. April 26, 2007)(citing *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)[6]). Verbal harassment, inexcusable as it may be, does ***not*** rise to the level of a constitutional violation. *Purcell v.  Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

Thus, to the extent that plaintiff alleges merely ***verbal*** harassment, he does not state an Eighth Amendment claim against defendant Davis.  Plaintiff does not allege that defendant Davis actually participated in the beating.  Plaintiff stated at his deposition that the only individuals in the room during the beating were defendants Koziol and Wright, who are not moving for summary judgment.  Plaintiff alleges that defendant Davis acted as a "lookout" to make sure that no one entered the room while plaintiff was being beaten.  Plaintiff alleges that defendant Kuc was there "throughout" and at the end of the incident, pulled on plaintiff's beard in an effort to force plaintiff to agree that he would not tell anyone about the assault.

The court, however, notes that, ***as claimed by plaintiff***, it appears that all the defendants were aware of what was going to happen to the plaintiff in the small room to which he was allegedly taken on April 20, 2003.  The fact that defendant Davis was not in the room, but was acting as a "lookout" so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault.  An officer's failure to intervene during another officer's use of excessive force can itself

---

[6] *Shabazz v. Pico* was vacated in part on other grounds unrelated to the harassment issue in *Shabazz v. Pico*, 205 F.3d 1324 (2d Cir. 2000), *reported in full*, 2000 U.S. App. LEXIS 3404 (2d Cir. Feb. 24, 2000).

constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it. *See Cusamano v. Sobek*, 9:06-CV-623, 2009 U.S. Dist. LEXIS 5283, *13-14 (N.D.N.Y Jan. 26, 2009)(citing cases).

In *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), the court held that an officer may be personally involved[7] in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so.  While pulling on someone's beard may not be excessive force in itself, the fact that defendant Kuc[8] is alleged to have been in the vicinity throughout is sufficient to render him personally involved at this stage of the case.

Defendants argues that plaintiff does not specifically allege a failure to intervene, and therefore plaintiff's claims against Davis and Kuc must be dismissed. This court cannot agree.  A *pro se* plaintiff's papers must be read to raise the strongest arguments that they suggest. *See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2003). The fact that plaintiff may not have specifically raised a "failure to intervene" claim or have been aware of the appropriate language to state the claim does not justify

---

[7] This concept is based on the proposition that an individual defendant must be "personally involved" in the constitutional violation of which the plaintiff complains. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).

[8] The court does note that in plaintiff's response to the motion for summary judgment, he states that defendant Kuc was the one who pulled on his sweatshirt drawstrings, choking plaintiff to the point where he nearly fainted. Pl. Mem. of Law at p.8.  This is the first time that plaintiff makes this statement, and it is inconsistent with both the amended complaint and plaintiff's deposition.  Thus, the court is not basing its recommendation upon this alleged "involvement" by Kuc.  The court relies only upon the allegation that Kuc was present throughout the incident.

11

dismissing the plaintiff's claim at this point.  The court may reasonably interpret plaintiff's claim as alleging a failure to intervene, particularly when plaintiff states that Davis acted as a "lookout" to make sure that no one came into the room, and defendant Kuc was there throughout the incident.

Defendant Withers's involvement was different, however.  Defendant Withers allegedly told the other defendants not to do anything to plaintiff until they brought him back to the block.  His statement could be interpreted to indicate that defendant Withers knew that plaintiff was going to be assaulted, and even that defendant Withers was directing that this use of force occur.  The court understands that the administrative investigation concluded that none of the defendants engaged in the conduct of which they are accused, and this court makes no findings regarding the ultimate merits of this case, however, there appears to be a question of fact regarding this statement.  If defendant Withers did direct the other defendants to assault plaintiff, then he is also personally responsible for the result.  Therefore, this court will not recommend granting summary judgment in favor of any of the moving defendants.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED,** that the motion for partial summary judgment on behalf of defendants Davis, Kuc, and Withers (Dkt. No. 72) be **GRANTED only to the extent that plaintiff's amended complaint may be read to allege Official Capacity claims**, and it is further

**RECOMMENDED,** that defendants' motion for partial summary judgment (Dkt. No. 72) be **DENIED IN ALL OTHER RESPECTS**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 12, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

13